UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-187-GWU


CRAIG M. BATEMAN,                                                              PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                             DEFENDANT.


## INTRODUCTION

Craig Bateman brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g.,  Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the

ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work

experience.

One of the residual functional capacity levels used in the guidelines, called

"light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. §

404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Bateman, a 35-year-old former gatehouse security worker, mall security guard, hospital housekeeper, residential aide, and cashier/stocker with a high school education, suffered from impairments related to discogenic and degenerative disorders of the back, an anxiety disorder, and a depressive disorder. (Tr. 6, 12). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level

work.  (Tr. 10, 12).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 13).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Jane Hall included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as an inability to more than occasionally bend, stoop, squat, and crouch and a  limitation to simple tasks involving only casual and infrequent contact with others.  (Tr. 47).  In response, Hall identified a significant number of jobs in the national economy which could still be performed.  (Tr. 48). The ALJ then added a restriction involving an inability to sit, stand or walk for more than 30 minutes at a time.  (Id.).  The expert testified that such an additional limitation would reduce the available job base but still leave a significant number of jobs remaining which could be done. (Id.).  Therefore, assuming that the vocational factors considered by Hall fairly characterized Bateman's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  In March of 2007, Dr. Arthur Schlyer, a treating source, gave Bateman a work release and only restricted him from smoking.  (Tr. 223).  The claimant conceded during his hearing testimony that Dr. Malcolm Foster, another treating physician, had not imposed specific work restrictions on him.[1]  (Tr. 40).  The plaintiff was examined by Dr. Martin Fritzhand who diagnosed chronic pain syndrome and exogenous obesity.  (Tr. 319).  While stating that he could not give definitive limitations, assuming non-contributory x-rays and a normal sedimentation rate, the doctor indicated that the claimant would be no more than "moderately" limited in ambulating, sitting, standing, bending, kneeling, pushing, pulling, and lifting or carrying heavy objects.  (Id.).  Dr. Sudhideb Mukherjee, a non-examining medical reviewer, opined that Bateman did not suffer from a "severe" physical impairment. (Tr. 394). Significantly, no treating, examining or reviewing source identified the existence of more severe physical restrictions than those found by the ALJ.  Therefore, the court finds no error.

With regard to the evidence of record pertaining to Bateman's mental condition, the court also finds no error.  The plaintiff sought treatment for his mental

---

[1] The plaintiff reported that Dr. Foster had indicated that he could not perform work activity due to his medical problems.  (Tr. 40).  Such an opinion goes to the ultimate question of disability and is reserved to the Commissioner under the federal regulations at 20 C.F.R. § 404.1527(e)(1).

problems at Harbor Behavioral Health Care where he was diagnosed with a major depression without psychotic features, panic attacks without agoraphobia and a history of cocaine abuse in remission.  (Tr. 313).  While the staff did not identify specific functional limitations, the plaintiff's Global Assessment of Functioning (GAF) was rated at 65.  (Tr. 313, 349, 418).  Such a GAF suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Psychologists Laura Cutler (Tr. 352-353) and Mary Thompson (Tr. 376-377) each reviewed the record and opined that the claimant would be "moderately" limited in such areas as maintaining attention and concentration for extended time periods, interacting appropriately with the general public, and responding appropriately to changes in the work setting.  The mental factors of the hypothetical question were essentially compatible with these limitations.  These opinions support the administrative decision.

Psychologist Jessica Huett examined Bateman and opined that he would be "moderately" limited in dealing with simple, repetitive tasks, "moderately to markedly" limited in responding appropriately to supervision, co-workers and work pressures in a work setting and "markedly" limited in tolerating stress and pressures of work activity.  (Tr. 325).  These are far more severe mental limitations than those found by the ALJ.  However, Cutler indicated that this opinion was not well-

supported by either the examiner's own findings or the overall record.  (Tr. 354).

The reviewer noted that the treating source at Harbor Behavioral Health Care

identified only mild psychological symptoms. (Id.).  The limitation concerning simple

work was said to be inconsistent with the examiner's finding of average intelligence.

(Tr. 324, 354).   The serious restriction concerning relating to others appeared

incompatible with Huett's failure to note any problems in relating to the plaintiff

during her examination.  (Tr. 321-326, 354).  He denied interpersonal problems on

the Activities of Daily Living form.  (Tr. 354).  The staff at Harbor Behavioral Health

Care indicated the claimant was very cooperative with them.  (Tr. 349).  An ALJ may

rely upon the opinion of a non-examiner over that of an examining source who

clearly states the reasons for her differing opinion.  Barker v. Shalala, 40 F.3d 789,

794 (6th Cir. 1994).  Therefore, under these circumstances, the court finds no error.

Bateman argues that the ALJ did not properly evaluate his subjective pain

complaints.  Pain complaints are to be evaluated under the standards announced

in Duncan v. Secretary of Health and Human Services , 801 F.2d 847, 853 (6th Cir.

1986): there must be evidence of an underlying medical condition and (1) there

must be objective medical evidence to confirm the severity of the alleged pain

arising from the condition or (2) the objectively determined medical condition must

be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Bateman was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  Treatment records from Dr. Schlyer indicated that a May, 2005 x-ray of the plaintiff's ribs was negative.  (Tr. 232).  The doctor did not report any abnormal  musculoskeletal findings.  (Tr. 220-248).  Treatment records from Dr. Foster reported complaints of neck and back pain but recorded no physical examination abnormalities.  (Tr. 327-333, 370-375, 403-405).  An MRI scan of the cervical spine revealed disc bulging at C3 through C7 but the physician imposed no physical restrictions.  (Tr. 407).  Dr. Fritzhand reported a normal neurological examination.  (Tr. 318).  Muscle and grip strength were well-preserved over the upper extremities and there was no sign of muscle atrophy.  (Tr. 318-319).  Joint abnormalities were not present.  (Tr. 319).  The ALJ observed that the claimant's treatment for his musculoskeletal problems had been conservative in nature with largely unremarkable clinical and diagnostic findings.  (Tr. 11).  With regard to his mental complaints, the ALJ noted that his therapist at Harbor Behavioral Health Care indicated that his panic attacks and anxiety were under good control with medication.  (Tr. 11, 311).  The frequency of the panic attacks was substantially reduced.  (Id.).  Finally, the ALJ noted that the plaintiff's frequent trips to Florida for medical care, up to seven times a year, did not support his claim of disabling mental

and physical problems.  (Tr. 12).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Bateman's pain complaints.

Bateman also asserts that the ALJ did not properly consider the combination of his impairments.  However, the court has already found that the vocational factors considered by the vocational expert fairly depicted the plaintiff's condition.  Thus, the ALJ implicitly considered all of the claimant's impairments in combination. Bateman has not specifically indicated how the ALJ erred on this point.  Therefore, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 16th day of March, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**